IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH R. CRANDALL,<br>    Plaintiff, | :<br>: |
| vs. | : No. 24-cv-626-JMY<br>:<br>: |
| DENIS R. MCDONOUGH, *Secretary Department of Veterans Affairs*, and DEPARTMENT OF VETERANS AFFAIRS,<br>    Defendants. | :<br>:<br>:<br>:<br>: |

**MEMORANDUM**

**Younge, J.**                                                                                         **September 13, 2024**

Currently before the Court is a *Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction* (ECF No. 28) filed by the above-captioned Defendants. (hereinafter "Motion", ECF No. 28.)  The Court finds this Motion appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, Defendants' Motion will be granted, and all claims asserted in the Amended Complaint will be dismissed with prejudice and without leave to amend.

**I.     FACTUAL AND PROCEDURAL BACKGROUND:**

**A.     Factual Background:**

Plaintiff worked for Defendant, the Department of Veterans Affairs (hereinafter VA), at its Philadelphia Regional Office from January 2010 to July 2013.  (Am. Compl. ¶ 5, ECF No. 19.)  Between October 2011 and October 2017, Plaintiff alleges that he "acted as a whistleblower and provided hundreds of confidential/sensitive reports to the White House, Members of Congress, the VA Secretary, a myriad of other VA leadership officials working for the Secretary, the VA Inspector General's Office, the Equal Employment Opportunity Commission (EEOC),

the [U.S.] Office of Special Counsel (OSC), and, various media outlets." (*Id.* ¶ 7.) He highlights a specific email he sent in February 2012 to then VA Undersecretary for Benefits, Allison Hickey, which identified an issue with duplicate payments and mail shredding. (*Id.* ¶ 8.)

Plaintiff's employment with the VA was terminated twice – first in February 2012, and again in July 2013. (*Id.* ¶¶ 9, 12.) Plaintiff challenged both termination decisions before the Merit Systems Protection Board (MSPB) – first in 2012, and again in 2013. (*Id.* ¶¶ 10–14.) In January 2014, Plaintiff and the VA entered a Settlement Agreement to resolve the latter MSPB complaint. (*Id.* ¶ 14.) Plaintiff avers that under the terms of the Settlement Agreement, he agreed to never again work for the VA. (*Id*. ¶ 15.)

At some point, Plaintiff moved to Florida, where he currently resides. (*Id.* ¶ 3.) In 2018, Plaintiff applied to the VA to be accredited as a VA claims agent, pursuant to 38 U.S.C. § 5904. (*Id*. ¶¶ 15, 18.) Claims agents are individuals accredited by the VA to represent veterans in certain hearings before the agency. *See* 38 U.S.C. § 5904. The VA's Chief Counsel for its Benefits Law Group, David J. Barrans, responded by letter denying Plaintiff's application on May 15, 2020. (Barrans Letter, Compl., Ex. A, ECF No. 1-1, Am. Compl. ¶ 19.) The denial letter cites numerous emails Plaintiff sent to officials and employees at the VA, including Diana Rubens, former Director of the VA's Philadelphia Regional Office, between 2016 and 2018. (Barrans Letter.) Barrans' denial letter quotes these emails, noting Plaintiff referred to Rubens as "Dirty D" and a "witch," and stated he would be "watching" her for a "very long time." (*Id.*) The letter further notes Plaintiff referred to another VA official as a pedophile, accused various officials of "horrendous acts as to illegal employee firings," and stated that he was "looking forward to a new White Administration." (*Id.*) Barrans' denial letter concludes that these emails raise serious concerns about Plaintiff's character and ability to provide valuable assistance to

veteran claimants. (*Id.*) Plaintiff responded to the denial and agreed that the referenced emails "may be perceived as improper." (*Id.* at Ex. B.) Plaintiff now alleges these emails are stored in the VA system of records. (Am. Compl. ¶ 28.) It would appear that Plaintiff also alleges that the VA improperly relied on emails that he previously wrote and sent to deny his request to become an accredited claims agent. (Compl., Ex. D., ECF 1-1.)

In 2018, the VA began using the VIEWS platform to review and revise documents in VA's Case and Correspondence Management (CCM) system. (Am. Compl. ¶ 16.) VIEWS replaced the VA Intranet Quorum (VA IQ) platform. (*Id.*) Plaintiff "believes his records were first stored in VA IQ, and later in VIEWS." (*Id.*) Plaintiff believes these "records" include the emails cited in Barrans' denial letter. In Summer 2023, Plaintiff learned through news reports about public scrutiny related to the security of the VIEWS system. (*Id.* ¶ 21 n.8.) He alleges that OSC asked the VA to investigate the security of the VIEWS system. (*Id.* ¶ 32.) He further alleges that the VA provided a draft report to OSC that "identifies multiple data breaches/incidences." (*Id.* ¶ 33; Compl., Ex. C, ECF No. 1-1.) Plaintiff also complains that the VA failed to provide public notice of VIEWS CCM through a system of records notice (SORN). (Am. Compl. ¶ 22.)

**B.    Procedural History:**

On September 26, 2023, Plaintiff, acting *pro se*, initiated this civil action against Secretary McDonough in the U.S. District Court for the Middle District of Florida. (ECF No. 1.) The initial complaint asserted two counts under the Privacy Act, one count under the "Veterans Affairs Information Security Act," one cause of action under the Whistleblower Protection Act, and one cause of action under 42 U.S.C. § 1983. Secretary McDonough answered the complaint on December 7, 2023. (ECF No. 6.) On January 22, 2024, Plaintiff moved to transfer his case to

3

this District.  (*See* Mot. to Transfer, ECF No. 12.)  The motion was granted, and the case was transferred here on February 12, 2024.  (*See* Transfer, ECF Nos. 14–15.)

On February 20, 2024, Plaintiff moved to amend his complaint.  (Mot. to File Am. Compl., ECF No. 16.)  The Court granted that motion on February 22, 2024 (ECF No. 18), and the amended complaint was filed the same day.  (Am. Compl., ECF No. 19.)  Plaintiff's amended complaint adds the VA as a Defendant and asserts the following causes of action: (1) Failure to Maintain Records as is Relevant and Necessary, in violation of section 552a(e)(1) of the Privacy Act; (2) Failure to Provide Notice of Categories of Routine Use/Categories of Sources of Records, in violation of sections 552a(e)(4)(D) and (e)(4)(I) of the Privacy Act; (3) Violation of 42 U.S.C. § 1983 for Indifference to Constitutional Rights/Violation of section 552a(e)(7); (4) Violation of the Veterans Affairs Information Security Act; and (5) Violation of the Whistleblower Protection Act, 5 U.S.C. § 2302.  (Am. Compl.)

**II.  LEGAL STANDARD:**

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'"  *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

4

that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

## III.   DISCUSSION:

The Court will grant Defendants' motion to dismiss because Plaintiff fails to aver facts to establish a right to recover on any legal theory asserted in the Amended Compliant.  When a motion to dismiss is granted, the Court must decide whether to grant leave to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  See, e.g., *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  However, a court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879, 69 V.I. 1034 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

Since defects in Plaintiff's pleadings cannot be cured with further amendment, all claims asserted in this lawsuit will be dismissed with prejudice and without leave to amend.  See *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 879, 69 V.I. 1034 (3d Cir. 2018)* ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss'").

A.	**Plaintiff Cannot Establish a Claim Under the Whistleblower Protection Act (WPA) Based on the Facts and Circumstances Asserted in the Pleadings:**

Plaintiff is incapable of establishing that he was denied federal employment or suffered an adverse personnel action in connection with his application to become a Claims Agent with the VA. Therefore, he cannot establish a right to relief under the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b)(8)-(9). The WPA provides, in relevant part: "Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority – take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of [certain disclosures by the employee regarding violations of the law or gross mismanagement]." 5 U.S.C. § 2302(b)(8); Am. Compl. ¶ 70.)

The WPA is part of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101, *et seq*. *Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023); *see also Kerr v. Jewell*, 836 F.3d 1048, 1058 (9th Cir. 2016) ("The CSRA and the WPA are integrated into a single statutory scheme."); *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) ("[T]he CSRA provides the exclusive remedy for claims brought pursuant to the WPA."). The CSRA provides the exclusive statutory vehicle for "certain federal employees [to] obtain administrative and judicial review of specified adverse employment actions." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 11 (2012). The CSRA "prescribes in great detail the protections and remedies applicable to adverse personnel actions against federal employees." *Id.* at 11. Indeed, this "elaborate framework demonstrates Congress' intent to entirely foreclose . . . extrastatutory review . . . to those employees to whom the CSRA grants administrative and judicial review." *Id*.

Plaintiff alleges that he applied for approval to appear before the Department of Veterans Affairs as an accredited claims agent in connection with his employment at a private law firm.

6

(Am. Compl. ¶ 18.)  Plaintiff concedes that the personnel action at issue in this lawsuit is the May 2020 denial of his application to be an accredited claims agent.  (Pl.'s Opp. Br. page 26 n. 25.)  He also concedes that the application was not an application for federal employment.  (Pl.'s Opp. Br. page 23.)  Agents with the Department of Veterans Affairs are not federal employees; rather, they are accredited to represent veterans in certain hearings before the Department of Veterans Affairs.  See 38 U.S.C. § 5904.

Plaintiff does not complain about "retaliation taken … during the period that [he] was an employee or applicant" for federal employment; therefore, he cannot possibly state a claim under section 2302(b)(8).  *Guzman v. Off. Of Pers. Mgmt.*, 53 F. App'x 927, 929 (Fed. Cir. 2002) ("While former employees are included among those who can invoke the [WPA], 5 U.S.C. § 1221(a), a substantive violation of the Act, as defined in section 2302(b)(8), can be committed only against employees or applicants.").  Plaintiff must allege that this application was "an application for employment" to state a claim for relief under the WPA.  *See* 5 U.S.C. § 2302(b)(8).

Plaintiff's WPA claim simply does not arise out of an application for federal employment; therefore, he cannot state a claim for relief under the CSRA.  Plaintiff's claim under the WPA will be dismissed with prejudice and without leave to file an amended complaint to reassert these claims because amendment would be futile.

**B.      Plaintiff Cannot Assert a Viable Claim Against a Federal Agency or Official Under 42 U.S.C. § 1983:**

Plaintiff cannot maintain claims asserted in this lawsuit under 42 U.S.C. § 1983 because he has not identified a state actor who deprived him of rights under color of state law.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a

7

person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The United States and other governmental entities are not 'persons' within the meaning of Section 1983." *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970). Moreover, "because [Section] 1983 provides a remedy for violations of federal law by persons acting pursuant to *state* law, 'federal agencies and officers are facially exempt from Section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law." *Lee v. HUD*, No. 20-cv-3491, 2021 U.S. Dist. LEXIS 15773, at *9 (E.D. Pa. Jan. 28, 2021) ("[F]ederal agencies and officers are facially exempt from Section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law.").

The Amended Complaint does not and cannot allege that Defendants took any actions under color of state law. Plaintiff asserts that Defendants – a federal agency and its Secretary – violated his Constitutional rights while acting in the course of their federally prescribed duties. Specifically, Plaintiff alleges that David Barrans, Chief of VA Benefits Law Group, denied Plaintiff's application while Barrans was representing the VA and acting in the course of his federal employment. (Am. Compl. ¶¶ 19, 28; Pl.'s Opp. Br. page 27.) These allegations cannot support a claim for relief under Section 1983. Therefore, these claims will be dismissed with prejudice and without leave to file an amended complaint because amendment would be futile.

C. **The Veterans Benefits, Health Care, and Information Security Act of 2006 Does Not Create a Private Right of Action that Plaintiff Can Pursue:**

It would appear that Plaintiff attempts to assert a claim under the Veterans Benefits, Health Care, and Information Technology Act of 2006 (VBHCITA), 38 U.S.C. § 5721, *et seq*. The VBHCITA generally provides that "[i]n the event of a data breach with respect to sensitive personal information . . . [either] a non-Department entity or the Office of the Inspector General of the Department conducts an independent risk analysis of the data breach to determine the level

of risk associated with the data breach for the potential misuse of any sensitive personal information involved in the data breach." 38 U.S.C. § 5724(a)(1).  The VBHCITA further states:

> If the Secretary determines, based on the findings of a risk analysis conducted under paragraph (1), that a reasonable risk exists for the potential misuse of sensitive personal information involved in a data breach, the Secretary shall provide credit protection services in accordance with the regulations prescribed by the Secretary under this section.

38 U.S.C. § 5724(a)(2).

After a review of the VBHCITA, the Court finds no language to create a private right of action which would permit Plaintiff to bring suit to enforce its provisions. *Tilley v. Weisser*, 2006 U.S. Dist. LEXIS 23058, at 11 (E.D. Pa. 2006) ("[the VBHCITA] does not establish a cause of action for the wrongful release of a veteran's medical records.").  Congress may create a private right of action that is either expressed or implied.  *Three Rivers Ctr. for Independent Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 420-421 (3d Cir. 2004).  A plain reading of the VBHCITA, illustrates Congressional intent to empower the VA Secretary to take certain actions, and does not imply Congressional desire to provide civil rights to litigants.  *See* 38 U.S.C. § 5721 (explaining the purpose of the Act is to provide security for VA information systems and communicate the responsibilities of VA officials toward achieving that goal). Plaintiff cannot assert a claim under a federal statute that does not create a private right of action.

Plaintiff could potentially pursue an enforcement action under the Administrative Procedures Act, 5 U.S.C. § 702, *et seq*.  See *Fanin v. VA*, 572 F.3d 868, 875 (11th Cir. June 17, 2009); *Perkins v. VA*, 2010 U.S. Dist. LEXIS 162409, *21 (N.D. Ala, April 21, 2020).  However, such a claim is not pled here.  It is also extremely unlikely that Plaintiff could prevail in a VBHCITA claim under the Administrative Procedures Act.  Section 5724(a)(1) of the VBHCITA simply requires the VA to investigate a suspected data breach and to provide credit

monitoring to certain victims of any data breach. In this case, the pleadings suggest that the VA conducted an investigation into allegations that whistleblower information was improperly coded and leaked to VIEWS users within the VA. (Report to the Office of Special Counsel, Compl., Ex. C., ECF No. 1-1 page 10.) The alleged data breach at issue in this case involved the purported internal leak of Plaintiff's whistleblower activities to the VA's Chief Counsel for its Benefits Law Group, David J. Barrans. Even if this purported data breach occurred, it is not the type of leak that would require the VA to provide Plaintiff with credit monitoring services – this is not a situation where a veteran's medical records are leaked to the public. Therefore, Plaintiff's VBHCITA claim fails, and leave to amend will not be granted.

**D.     Plaintiff Fails to State a Claim under the Privacy Act of 1974, 5 U.S.C. § 552a:**

Plaintiff cannot establish that he suffered any actual harm, adverse effects, or pecuniary damages because of any purported violation of the Privacy Act of 1974, 5 U.S.C. § 552a. Therefore, the claims Plaintiff asserts under the Privacy Act must be dismissed with prejudice and without leave to amend because he cannot establish a necessary element of those claims.

To state an actionable claim under the Privacy Act, Plaintiff must allege that the agency intentionally and willfully violated the Privacy Act in a way that caused him adverse effects including specific, pecuniary damages. *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005); see also *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 287 (2012) (holding that damages under the Privacy Act "are limited to actual pecuniary loss, which must be specifically pleaded and proved."). To pursue any claims that he asserts under the Privacy Act, Plaintiff must allege that Defendants' failure to comply with the Privacy Act had "an adverse effect" on him. 5 U.S.C. § 552a(g)(1)(D). Plaintiff must plead sufficient facts to establish that Defendants acted in an intentional or willful manner that caused him "actual damages" as a result of the

purported failure.  552a(g)(1)(D); 552(g)(4)(A); see also *Thompson v. Dep't of State*, 400 F. Sup. 2d 1, 8 (D.D.C. 2005) (explaining a Privacy Act plaintiff must plead "(1) a violation of a Privacy Act provision, (2) that the [agency's] decision . . . was intentional or willful, (3) that the [violation] caused adverse effects, and (4) that the plaintiff[] suffered actual damages"). "Actual damages" under the Privacy Act "are limited to actual pecuniary loss, which must be specifically pleaded and proved." *Fed. Aviation Admin. v. Cooper*, 566 U.S. at 287.

In this action, Plaintiff alleges that the VA maintained records about him in its VIEWS system in violation of the Privacy Act of 1974.  He asserts violations under 5 U.S.C. § 552a(e)(1) (First Cause of Action), 5 U.S.C. § 552a(e)(4) (Second Cause of Action), and 5 U.S.C. § 552a(e)(1) (Third Cause of Action).  Section 552a(e)(1) requires the VA to "maintain in its records only such information about an individual as relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute."  Section 552a(e)(4) sets forth a series of requirements related to an individual's right to be notified of the existence of records pertaining to such individual, requirements for identifying an individual who requests access to records, the agency procedure relating to access to records and how to contest information contained in such records.  Section 552a(e)(7) prohibits the VA from maintaining any record "describing how any individual exercises rights guaranteed by the First Amendment" unless authorized by statute or the individual or pertinent to law enforcement.

The only actual damages that Plaintiff asserts in his Amended Complaint is the denial of his application to be a claims agent.  Chief Counsel for the Benefits Law Group at the VA, David J. Barrans, denied Plaintiff's application in May of 2020 because Plaintiff had a history of sending inflammatory and inappropriate emails to personnel at the VA.  Barrans' denial letter concludes that the inflammatory and inappropriate emails written and forwarded by Plaintiff

11

raise serious concerns about Plaintiff's character and ability to provide valuable assistance to veteran claimants. (Barrans Letter.)

Barrans had a legal duty to inquire about and determine Plaintiff's character to serve as a claims agent. To become an accredited claims agent, an applicant must show that he "is of good moral character and in good repute" and "is qualified to render claimants valuable service." 38 U.S.C. § 5904(a)(2)(A); *see also* 38 C.F.R. § 14.629(b)(2). Federal regulations require the Chief Counsel with subject-matter jurisdiction to "conduct an inquiry" and determine whether the prospective agent is qualified. 38 C.F.R. § 14.629(d). That determination "may only be appealed to the Board of Veterans' Appeals." *Id.* § 14.629(d)(2)(ii).

Aside from conclusory statements, Plaintiff does not assert any facts or raise any argument in his brief to suggest that his emails were not relevant and necessary to the inquiry into his character and fitness to serve as a claims agent. Assuming arguendo that Plaintiff's emails where in fact maintained in the VIEWS system, Plaintiff is incapable of realistically establishing that Barrans would not have learned of the existence of these emails and their content if they had not been uploaded to the VIEWS system. Plaintiff cannot realistically establish but for causation – that but for the fact that the emails were accessible through the VIEWS system Barrans would never have learned of their existence.

It defies logical analysis to conclude that the only place where the VA stored emails written and forwarded by Plaintiff was in its VIEWS system. Plaintiff was previously employed by the VA and had been fired on two separate occasions. Plaintiff avers that he challenged both termination decisions before the Merit System Protections Board (MSPB) and reached a settlement agreement in January of 2014 to resolve the second MSPB dispute. As part of the agreement, Plaintiff avers that he agreed to never again work for the VA. Based on the facts and

circumstances surround this case, it would be fair to assume that the legal department at the VA maintained some record of the settlement agreement reached to resolve the employment dispute between the Parties.

There is nothing to show that maintenance of records related to the prior employment dispute violated the Privacy Act of 1974. With specific reference to Plaintiffs' Section 552a(e)(1) claim, "This subsection is not violated so long as the maintenance of the information at issue is relevant and necessary to accomplish a legal purpose of the agency." *Thompson*, 400 F. Supp. 2d at 17. With regard to Plaintiff's Section 552a(e)(7) claim, the Court is of the opinion that Plaintiff's first amendment rights are not implicated in the maintenance of records related to the employment dispute between the Parties and the settlement agreement reached in relationship to that dispute.

**IV. CONCLUSION:**

For these reasons, claims asserted in the Amended Complaint will be dismissed with prejudice and without leave to amend.

BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge